# In the United States Court of Federal Claims

No. 21-1520L

(Filed: May 22, 2024)

|  |  |
|---|---|
| **DONALD J. AUSTIN et al.,** | ) |
|  | ) |
| *Plaintiffs,* | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **THE UNITED STATES,** | ) |
|  | ) |
| *Defendant.* | ) |
|  | ) |

## SUPPLEMENTAL PRE-TRIAL ORDER

Pending before the Court is the government's motion for a protective order in order to quash Plaintiffs' trial subpoena of the government's expert witness at trial. ECF No. 75. That motion is now fully briefed. ECF No. 81 (Plaintiffs' Response); ECF No. 85 (Defendant's Reply). The Court writes here both to resolve that motion and to summarize the resolution of other issues raised and discussed during various pre-trial status conferences the Court held at Plaintiffs' request.

## I.    The Scheduled Trial is Limited to Valuation (Just Compensation)

The Court starts closer to the beginning of this saga because, as the song goes, the beginning is generally "[a] very good place to start." *See* Oscar Hammerstein II, "Do-Re-Mi," *The Sound of Music* (1959).

In a July 5, 2022, joint status report (JSR), the parties indicated that "it appears that most questions of title and applicable source deeds may be resolved." ECF No. 23 ("Although there may be issues of adjacency still to be addressed for certain claims, it presently appears to the parties that settlement of these claims without further litigation may be possible."). The parties thus requested that "the Court defer entering a briefing schedule for a period of approximately sixty days to better allow the parties to explore whether a viable path to settlement can be reached[.]" *Id.* In response to that JSR, the Court ordered as follows:

> On or before September 6, 2022, the parties shall file a joint
> status report, updating the Court regarding whether a
> settlement has been reached in principle, or, in the alternative,
> addressing: (1) what actions the parties have taken toward
> settlement since the last joint status report; (2) what actions
> remain to be taken to complete settlement discussions; and (3)
> how long the parties expect it will take to complete those
> actions.  If the parties no longer believe that "settlement of
> these claims without further litigation" is possible, the parties
> shall include in the joint status report a schedule for further
> proceedings.

ECF No. 24.

In the parties' next JSR, filed September 6, 2022, the parties implied that liability issues had been resolved, such that they moved on to resolving questions of just compensation:

> The parties continue to explore potential settlement to resolve
> the claims in this case.  Towards that end, the parties each
> intend to engage an expert real estate appraiser to prepare
> appraisal reports. After the appraisers complete the reports,
> the parties will exchange reports to determine whether
> settlement is possible for some if not all claims.  For any claims
> not resolved through settlement, the parties will request a
> trial setting.

ECF No. 25.

Just two months later, on November 15, 2022, the parties confirmed that liability issues had, indeed, been resolved and that they were focusing only on valuation issues:

> [T]he parties have begun the process of separately engaging
> expert real estate appraisers to prepare appraisal reports.
> Given the numbers of claims in this case, the parties are
> working together to assemble a list of representative
> properties to use as a model for appraising the remaining
> claims in this case.

ECF No. 31.

Disappointed that the parties had not made much progress on the appraisal front and had not proposed specific deadlines for settlement progress, the Court decided that the best course of action was to "impose an extended stay for the parties to reach a settlement," without the need for what had become boilerplate periodic status reports. ECF No. 33 at 2.  Accordingly, the Court stayed "this matter for one year, until November 16, 2023," to "serve as the parties' final opportunity to resolve this case without further involvement from the Court." *Id.*  The Court cautioned that "[i]f a settlement in principle is not reached in that time frame, *the stay will be lifted, and this case will proceed forward.*" *Id.* (emphasis in original).

On June 27, 2023, Plaintiffs understandably moved this Court to lift the stay, set a deadline for exchange of expert appraisal reports, and to set this case for trial.  ECF No. 39.  Plaintiffs argued as follows:

> Last Friday, June 23, [2023,] the government's counsel responded indicating, for the first time, that the government was no longer agreeing to exchange appraisal reports, but instead proposed that a "less formal" method of settlement should be explored. This came as a shock to Plaintiffs' counsel, especially in light of the parties' joint representations to the Court in several status reports last year, as well as the parties' correspondence over the past year. Plaintiffs have spent considerable time and expense working to ensure these properties are appraised and in a position for final settlement by this November, as instructed by this Court's Order.

> But, based on recent discussions with the government's counsel, Plaintiffs no longer agree the parties are on a "viable path to settlement."  Because the government refuses to exchange appraisal reports and to even entertain stipulations as to basic facts such as the measurements of the property to be appraised, keeping the stay in place another four months will do nothing but delay resolution of this case.

> Accordingly, Plaintiffs respectfully request this stay be lifted, a deadline be set to exchange appraisal reports, and the case set for trial.

ECF No. 39 at 3-4.

Seeking to continue the stay, the government opposed Plaintiffs' motion.  ECF No. 42.  But, in its opposition, the government implied that the only remaining issue was the quantum of just compensation.  For example, while the government wanted to continue

settlement discussions, the government wanted Plaintiffs to produce their appraisal reports first, arguing that would be "the most efficient path forward" given that Plaintiffs have "the burden of proof on *just compensation.*"  ECF No. 42 at 3 (emphasis added). According to the government, it could then "review those reports and determine whether it requires additional reports for purposes of engaging in settlement discussions."  *Id.* The issue of *whether* there was even a taking of any plaintiff's property was not mentioned.

Following a status conference, Minute Order (July 20, 2023), the Court, on July 24, 2023, granted Plaintiffs' motion to lift the stay and put this case on a course for trial.  ECF No. 43.  On August 4, 2023, the parties filed a JSR, proposing a pre-trial schedule, ECF No. 44, which this Court adopted, ECF No. 46.

All the parties understood, based on this case's history, that the trial would concern valuation issues only — *i.e.*, the quantum of damages.  Indeed, in a **joint motion** to amend the schedule, filed February 16, 2024, the parties wrote this: "On August 8, 2023, this Court issued a scheduling order culminating in a **valuation trial** to be held in June 2024."  ECF No. 49 (emphasis added).  The government made no suggestion that it contested, or planned to contest, liability.  To the contrary, the government indicated that "it expects the parties will explore settlement in advance of trial based on the expert appraisal reports that have been and will be produced[.]"  *Id.* at 2.

In a March 26, 2024, status conference to address several of the parties' then-pending motions, the government reaffirmed the parties' and the Court's understanding that the upcoming trial would focus solely on damages:

> MR. BROCKER:  I think the United States views [the trial] as a **battle of the experts**.  I don't believe that the Plaintiffs' [trial testimony would] provide much of anything to the analysis.  The United States is trying to navigate this as efficiently as possible and ask Plaintiffs exactly which Plaintiffs they would even consider calling, so we just narrow the scope rather than noticing 170 depositions and trying to make sure we cover all of our bases.  But the . . . trial is the most efficient and streamlined as **essentially a battle of the experts**.

ECF No. 58 ("Tr. A") 33:11-20 (emphasis added).  This characterization of the upcoming trial — as a battle of the experts — only makes sense if the trial is about damages, not liability.  Indeed, as evidenced by the foregoing transcript excerpt, the government sought to avoid deposing individual representative plaintiffs on the grounds that their testimony would not be relevant.  If liability remained at issue, however, the government's position would have been frivolous.

Moreover, the Court adopted the government's view, precluding individual representative plaintiffs from testifying at trial, and explaining as follows to Plaintiffs' counsel:

> This [trial] is about **the valuation of the property**, and your expert was tasked with doing that valuation, and the Court will hear from the various experts and their methodologies and where they disagree with each other, and we'll hear cross about how those methodologies were implemented and the relative credibility of their opinions as to the value. And that's all this case is about at the end of the day. So I think the Government has the better position there. And that's how we're going to proceed.

Tr. A 35:8-17 (emphasis added).

Having successfully argued that Plaintiffs should be precluded from testifying at trial, the government is now estopped from contesting liability. As this Court previously has stated, "[t]he doctrine of judicial estoppel is intended to prevent a litigant from 'playing fast and loose with the courts' by assuming contrary positions in legal proceedings[.]" *City of Wilmington v. United States*, 152 Fed. Cl. 373, 378–79 (2021) (quoting *Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 127 (2011), and citing *Housing Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 643 (2020)). Thus, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the [other] party[.]" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The Supreme Court has identified a series of factors to consider when applying the doctrine of judicial estoppel: (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have succeeded in persuading a court to adopt the earlier position, thereby posing a "risk of inconsistent court determinations"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51. These factors are "nonexclusive" and "guide a court's decision whether to apply judicial estoppel[.]" *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007).

In this case, permitting the government to reopen the liability issue in this case would be flatly inconsistent with the government's argument that this trial is about the valuation of the property and, therefore, that Plaintiffs' testimony is irrelevant. If this case instead still concerned issues of liability (*e.g.*, title), Plaintiffs' testimony would unquestionably be relevant. The government, having prevailed in its argument that Plaintiffs should not be permitted to testify, cannot now take an inconsistent position and argue that liability remains at issue. If the Court were to decide otherwise, Plaintiffs

would be severely prejudiced by such a surprise and would have to retool their entire case presentation for a trial that starts in just a few weeks.

In any event, the government further conceded that it was not contesting liability. Far from registering any disagreement with the idea that this trial would be about the valuation of the property at issue, the government agreed that "this is, sort of, purely a battle of the experts"; counsel of record for the government sought "to amend that just slightly," caveating that "[t]he trail sponsors *may* have some relevant testimony[.]"  Tr. A 36:8-11 (emphasis added); *id.* 36:12-15 (government's counsel of record explaining that he "just wanted to clarify it[,] if I had been a little too generous in my summarization of the United States' view[,]" but noting "that is all I have").

The Court then clarified whether the government intended to contest any of the basic facts upon which Plaintiffs' experts relied, asking: "Does the Government plan on attacking those underlying facts, in which case, how do we avoid 200 Plaintiffs or whatever it is, 160 Plaintiffs from testifying?"  Tr. A 37:6-9.  The government responded that it did not intend "to undermine the experts in any manner that relates to the Plaintiffs" and instead asserted that "[t]he **_only_** facts that I think might undermine the experts would be the trail sponsors' own policies and plans."  Tr. A 37:10-14 (emphasis added).  In particular, "[t]o the extent the appraiser makes assumptions about what this trail will look like or the scope of the project that are in conflict with the trail sponsors stated plan, I think *that would be the extent of it.*"  Tr. A 37:14-18 (emphasis added).  The Court responded:  "I'm going to hold you to that[.]"  Tr. A 37:20.  Counsel for the government acknowledged, and did not disagree with, the Court's decision, Tr. 37:23, except to say that "to the extent that the appraiser is valuing impacts on improvements, the fact that those improvements continue to exist as they had, I don't think requires testimony."  Tr. A 38:11-15.

In summary, the Court had the following exchange with counsel of record for the government:

> THE COURT**:**  So let me rephrase.  The United States is not going to contest any facts about the property that Plaintiffs provided to the appraiser or that the appraiser relied upon from Plaintiffs.
>
> [COUNSEL FOR THE UNITED STATES]**:**  Exactly.

Tr. A 38:20-24.

**_At no point did the government ever suggest that any issues of liability remained outstanding for the Court to resolve._**

Following the March 26, 2024, status conference, the Court issued a trial management and scheduling order, including these instructions:

> On June 10, 2024, the parties shall jointly file a spreadsheet listing all the properties at issue in this case. For each property, the spreadsheet shall note which plaintiff is the owner, the plaintiffs' expert-appraiser's conclusion regarding his or her damages assessment, as well as the government's expert-appraiser's conclusion regarding the same. Counsel of record shall certify in writing in that filing that the estimates are true and accurate reflections of the values contained in the expert-appraisers' reports and which the parties expect the experts will adopt during trial.
>
> Only experts will be permitted to testify at trial. Either party seeking to have any percipient fact witness testify at trial must file a motion for leave to do so by the current motion *in limine* deadline. Prior to filing any such motion, the party who seeks leave to elicit such trial testimony must meet-and-confer with the opposing to party regarding the putative factual dispute at issue, attempt to arrive at stipulation that would avoid the need for such a motion and such testimony, and certify in the motion that such a discussion has occurred.

ECF No. 56 at 3 (¶¶ 1-2).

The government's preliminary witness list, filed with the Court on April 4, 2024, disclosed only a single expert witness. ECF No. 60. The government's final witness list, filed April 25, 2024, disclosed that the government "does not intend to call any witnesses in its case in chief." ECF No. 70.

On April 25, 2024, the government also filed its proposed findings of fact and conclusions of law. ECF No. 72. The conclusion of that brief makes clear that the government is focused solely on the quantum of just compensation owed, if any, for the taking that the government does not dispute occurred:

> The Supreme Court has established the standard for awarding just compensation under the Fifth Amendment. Plaintiffs' appraisers do not provide a viable basis for the Court to award compensation under that standard. Plaintiffs' valuations are contrary to law because they are premised on false assumptions and use improper and unreliable methodologies to inflate their demanded compensation. The

7

> Court must therefore reject Plaintiffs' evidence and find that
> Plaintiffs have failed to meet their burden and have not
> demonstrated an entitlement to just compensation.

ECF No. 72 at 21. The government is clearly referring only to the quantum of damages — the valuation of the property that has been taken — and not to liability. *Id.* at 1 ("The Supreme Court has defined 'just compensation' as the fair market value of the property interest taken on the date of the taking. Here, the proper measure of just compensation is the diminution in market value, if any, attributable to an easement for interim trail use being placed on those parts of the parcels that were already burdened by a railroad easement."). Thus, the government asserted that "the trial will reveal *the insufficiency of Plaintiffs' evidence of value* for each parcel." *Id.* (emphasis added). The government further summarized its position as follows: "Because Plaintiffs rely on flawed evidence and the opinions of real estate appraisers that are founded on improper assumptions, following trial, this Court should find that Plaintiffs failed to meet their burden of proving just compensation and are therefore entitled to no compensation." *Id.* at 2-3. In sum, the government's pre-trial brief does not purport to contest liability for the taking of property the Plaintiffs allege.

Moreover, the government *never*: (a) moved for leave to amend the scheduling order such that the trial would cover liability issues; (b) moved to correct the parties' joint motion, ECF No. 49, which characterized the upcoming trial as a "valuation trial"; (c) moved to withdraw its objection to Plaintiffs' testifying at trial; (d) moved to correct the Court's and Plaintiffs' understanding of the trial as focused solely on valuation; or (e) moved for leave to have any fact witness testify at trial (abandoning the position that the trail sponsors' testimony was relevant to valuation).

On May 7, 2024, the Court held a status conference at Plaintiffs' request. ECF No. 83 ("Tr. B"). During that status conference, the government *for the first time* asserted that "[t]he liability question in this case exclusively relates to ownership" — *i.e.*, "whether Plaintiffs can demonstrate, by a preponderance of the evidence, whether they actually owned a property within the corridor on the date of taking." Tr. B 11:10-13. ***There is no mention of this issue in the government's pre-trial brief***. In that regard, the government conceded that earlier references to a "valuation trial means [a] valuation trial on just compensation." Tr. B 13:21-22. Counsel for the government further conceded that, during the March 26, 2024, status conference, he twice asserted that this trial would be a "battle of the experts" with the lone exception being possible testimony concerning "the scope of the plans of the trail sponsor"; indeed, counsel for the government agreed that he "didn't mention in that status conference any of these liability issues." Tr. B. 22:17-23:6; *see also* Tr. B. 34:19 -- 34:23 ("THE COURT: …I said at the status conference, that's referenced in my order, the trial is about a valuation of the property. You had one reservation, which was the scope of the trail use. Am I wrong? [COUNSEL FOR THE UNITED STATES]: No, Your Honor, you're not.").

Accordingly, whether viewed through the lens of waiver, abandonment, or estoppel, the government is foreclosed from contesting liability at trial.

Nevertheless, and apparently out of an abundance of caution for a complete trial record, Plaintiffs' counsel agreed: (a) that she has no objection to the government's making the *legal* arguments raised in its pre-trial brief; and (b) Plaintiffs are willing to "present evidence" on "ownership and th[e] warranty deed" either "at trial and/or post-trial briefing." Tr. B 26:20-25. Any such evidence must, of course, be entered at trial, although the implications may be addressed by both parties in post-trial briefing. In addition, with respect to such evidence, Plaintiffs' counsel argued that they would need to call Ms. Cynthia R. Straup at trial.

In light of the Court's discussion with the parties during the May 7, 2024, status conference, the Court **ORDERS** the parties to meet and confer, no later than Thursday, May 30, 2024, regarding how they wish to proceed. As part of that meet-and-confer, the government shall disclose to Plaintiffs: (1) whether the government intends to challenge the ownership of any property at issue and, if so, the precise property or properties for which ownership is contested; and (2) whether the government contests the dimensions of the area(s) taken and for which an appraisal has been rendered by Plaintiffs' expert(s). This information shall be included on the joint spreadsheet the parties must file on or before June 10, 2024, pursuant to this Court's March 26, 2024, order. ECF No. 56 at 3.

If the government intends to challenge the ownership of any property at issue, Plaintiffs shall be permitted to amend their witness list, accordingly, to address the government's position, but must file such an amended witness list on or before Tuesday, June 4, 2024, at 5:00 pm. If the government intends to contest the area of the take, Plaintiffs shall be permitted to call Ms. Straup at trial, consistent with how her testimony previously has been handled in this Court. *Agapion v. United States*, 167 Fed. Cl. 761, 770 (2023) (noting that "Plaintiffs presented fact testimony from Ms. Cynthia Ramos Straup, managing director of the GIS-mapping company Straup Solutions."), *appeal dismissed sub nom. Burger v. United States*, No. 2024-1249, 2024 WL 1092511 (Fed. Cir. Mar. 13, 2024). This result, if it proves necessary, is particularly fair because the government initially represented during the March 26, 2024, status conference that the government would not challenge any facts upon which the Plaintiffs' experts relied, save for those related to the trail sponsors' plans and the impacts on improvements. *See* Tr. A 37-38. The government's suggestion that it was referring only to facts provided by the literal Plaintiffs themselves — *i.e.*, personally and not their counsel — is nothing short of absurd.

As with any legal or factual assertions made to this Court, frivolous arguments in support of, or in opposition to, claims of ownership or the area taken will not be tolerated. The parties are thus cautioned that this Court will zealously enforce RCFC 11.

## II.   <u>Government's Motion for Protective Order</u>

The United States seeks a protective order quashing Plaintiffs' trial subpoena directed to the government's appraiser, Damon Bidencope, MAI, whom Plaintiffs seek to call in their case-in-chief.  ECF No. 75 at 1.

The Court **DENIES** the government's motion *without prejudice*.

First, just like the district court in *Kerns v. Pro-Foam of S. Alabama, Inc.*, 572 F. Supp. 2d 1303 (S.D. Ala. 2007), "[n]either the parties' briefs nor the Court's own research reveals any per se rule forbidding a party from calling an adversary's expert during his case-in-chief."  572 F. Supp. 2d at 1309.  Indeed, there is robust contrary authority.  *See id.* (discussing cases).

Second, the government's objections here do not improve upon those the district court rejected in *Kerns*.

Third, the series of rhetorical questions the government raises, ECF No. 75 at 4-5, do not amount to an argument.

While the Court remains unconvinced that the government would be prejudiced *per se* by Plaintiffs' calling Mr. Bidencope at trial, the Plaintiffs fail to explain why his testimony is necessary or relevant, and not unduly cumulative, pursuant to Federal Rule of Evidence 403.  In that regard, the Court generally agrees with the government that Mr. Bidencope likely cannot offer relevant testimony regarding "a legal instruction from . . . the United States," particularly "[w]here the United States has not made any argument to the Court in reliance on the legal instruction it gave its expert, and where it in fact has withdrawn the expert in part because it believes the legal instruction was incorrect[.]" ECF No. 85 at 2.

Accordingly, once Plaintiffs have presented their other witnesses at trial, the Court will revisit this issue, assuming the Plaintiffs still wish to call Mr. Bidencope and assuming the government continues to assert an objection.  By then, the Court expects the parties to have considered the evidentiary issues – and the relative equities – in more depth than they were presented in the parties' filings.  In the meantime, the government shall ensure that Mr. Bidencope is prepared to comply with the subpoena.

**IT IS SO ORDERED**.

<u>s/Matthew H. Solomson</u>
Matthew H. Solomson
Judge